Thomas M. Christ, OSB No. 834064
tchrist@cosgravelaw.com
Paul A. C. Berg, OSB No. 062738
pberg@cosgravelaw.com
COSGRAVE VERGEER KESTER LLP
888 S.W. 5th Ave, Suite 500
Portland, Oregon 97204
Telephone:     (503) 323-9000
Facsimile:     (503) 323-9019

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation,<br><br>Defendant. | Case No. 3:15-cv-00217 HZ<br><br>**Defendant's Cross-Motion for Summary Judgment (and Response to Plaintiff's Motion)**<br><br>**Oral Argument Requested** |

## I. INTRODUCTION

This is an action to determine whether defendant Liberty Mutual Insurance Company (Liberty Mutual) owes a duty to defend plaintiff Portland General Electric (PGE) in a lawsuit now pending in state court, and to pay any judgment that might be entered against PGE in that lawsuit. For the reasons that follow, the court should conclude that Liberty Mutual owes no duty to defend, and that the duty-to-pay issue is premature, there being no judgment yet in the underlying case.

*// // //*

**Page 1 - Defendant's Cross-Motion for Summary Judgment**

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

## II. BACKGROUND

The relevant facts are short, simple, and, for the most part, undisputed. They appear in the exhibits appended to PGE's motion for summary judgment, which Liberty Mutual adopts as its own, excepting exhibits 10 and 11, plus two exhibits to this cross-motion.

This action arises out of an on-the-job injury to an employee of NAES Power Contractors, Inc. (NAES). At the time, NAES was under contract with PGE to construct improvements at PGE's power plant in Boardman, Oregon. The employee, Joel Belgarde, sued PGE in state court, alleging that his injury was caused by PGE's negligence and violation of the Oregon Employers Liability Law, which requires that Oregon employers maintain safe places of employment. *See* Ex. 6 at ¶¶ 6-21 (Doc. 8, pp. 36-39).

PGE tendered its defense to Liberty Mutual, claiming it was an additional insured under Liberty Mutual's policy with AEGIS Insurance Services, Inc. (AEGIS), based on a certificate of liability that says as much. Ex. 7 (Doc. 8, p. 41). NAES, purporting to act Liberty Mutual's behalf, denied the tender. Ex. 8 (Doc. 8, p. 44).

PGE then brought this action against Liberty Mutual. The first claim of the complaint alleges that Liberty Mutual owes a duty to defend and indemnify PGE in Belgarde's lawsuit. Doc. 1, p. 4. The second claim alleges that Liberty Mutual owes damages to PGE for failing to defend and indemnify PGE in that lawsuit. *Id.*

In its answer, Liberty Mutual denies that it owes a duty to defend or indemnity PGE against Belgarde. Doc. 7, p. 2. It also alleges that the duty-to-indemnify issue is premature and thus not justiciable. *Id.* at p. 3.

*// // //*

*// // //*

**Page 2 - Defendant's Cross-Motion for Summary Judgment**

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

PGE filed a motion for summary judgment on both the duty to defend and the duty to indemnify. Doc. 7. Liberty Mutual now files this cross-motion, which also serves as its response to PGE's motion.

## III. DISCUSSION

For the reasons that follow, which include opinions by this court in similar cases, Liberty Mutual owes no duty to defend PGE in Belgarde's lawsuit. As for the duty to indemnify, that issue is not ripe for adjudication.

### A.    No Duty to Defend

The duties, if any, that Liberty Mutual owes to PGE arise, if at all, under Liberty Mutual's policy with NAES. Those duties include the duty to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury,'" and to "defend any 'suit' seeking those damages." Ex 5 (Doc.8, p. 32). There is no dispute here that Belgarde suffered a "bodily injury," and that his action against PGE qualifies as a "suit." The question, then, is whether PGE is an "insured."

The certificate of insurance, cited in PGE's tender of defense, Ex. 7 (Doc. 8, p. 41), doesn't prove that it is. The certificate, issued by an insurance broker, says in part: "PORTLAND GENERAL ELECTRIC IS INCLUDED AS [AN] ADDITIONAL INSURED WHERE REQUIRED BY WRITTEN CONTRACT AND ALLOWED BY LAW * * *." Ex. 2 (Doc. 8, p. 24). But the certificate is not a part of the policy. It's just a certificate – a representation by the broker of what the broker thinks the policy covers. The broker could be wrong; the policy might not cover what the certificate says it does, or the law might not allow

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

228139781397

coverage for particular risks (more on that later).  In that regard, the certificate is informational

only.  Which is just what it says in capital letters at the top of the page:  "THIS CERTIFICATE

IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS

UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND,

EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW."  A

similar admonition appears mid-page:  "THE INSURANCE AFFORDED BY THE POLICIES

DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND

CONDITIONS OF SUCH POLICIES."  In *Baylor v. Continental Casualty Co.*, 190 Or. App. 25,

33-34, 78 P.3d 108 (2003), and *Stallworth v. Sam Yoder Trucking*, 109 Or. App. 280, 284-185,

819 P.2d 316 (1991), the Oregon Court of Appeals held that certificates of insurance with similar

disclaimers did not affect the coverage under the policies at issue in those cases.  Thus, under

Oregon law, which the parties agree applies here, the certificate of insurance does not make PGE

an "insured," if the policy itself doesn't.

 As for the policy itself, it includes a section entitled, helpfully, "Who Is An Insured."  But

for some reason PGE omits that section from the policy excerpts appended to its motion (Ex. 5)

(Doc. 8, p. 32).  Suffice it to say, PGE does not qualify as an "insured" under that section as

written.  But it might qualify, to a limited extent, under that section *as amended* by an

endorsement to the policy that does appear within PGE's exhibits.  The endorsement, entitled

"Blanket Additional Insured" (LN 20 01 06 05), amends the "who-is-an-insured" section "to

include as an insured any person or organization for whom you have agreed in writing to provide

liability insurance."  Ex. 3 (Doc. 8, p. 26).

 As used in the policy and endorsement, "you" refers to the "named insured" as shown in

the declarations or any other person qualifying as such.  Ex. 5 (Doc. 8, p. 32).  The named

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

insured in the declarations – reproduced as Exhibit A to this cross-motion – is Aegis. But, for present purposes only, Liberty Mutual will concede that NAES qualifies as a named insured too based on other policy-related documents that PGE failed to present to the court. Thus, under the endorsement, the term "insured" includes anyone that either Aegis or NAES agrees in writing to insure.

As it happens, the contract between NAES and PGE includes an agreement by NAES to provide liability insurance for PGE. Ex. 1 (Doc. 8, pp. 19-20). But, as explained below, that agreement might not be enforceable, or at least not enforceable in full. If it's not enforceable, then PGE would not qualify as an insured under the endorsement and Liberty Mutual would owe no duty to defend it. And even if it's enforceable only in part, Liberty Mutual still would owe no duty to defend it against this lawsuit.

## 1.    ORS 30.140

ORS 30.140 is an Oregon statute that invalidates any provision in a construction contract that requires one party, usually a contractor, or that party's insurer, to indemnify another party, usually an owner, against liability for personal injury or property damage caused by the other party in whole or in part. That statute reads in relevant part:

> "(1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.

> "(2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor * * *."

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

Under section (1), an agreement by a contractor or contractor's insurer to indemnify the owner for liability for injury caused by the owner – even in part – is void. But, under subsection (2), the agreement can still require the contractor or contractor's insurer to indemnify the owner for liability for injury caused by the contractor only.

In *Walsh Construction Co. v. Mutual of Enumclaw*, 189 Or. App. 400, 76 P.3d 164 (2003), the Oregon Court of Appeals concluded that the statute's reference to "a person or that person's surety or insurer" means that the statute applies not only to promises to indemnify but also to promises to insure. In other words, the court held that ORS 30.140(1) invalidates not only a provision in a construction contract that requires one party to indemnify another against liability for the other's own fault, but also a provision that requires one party to procure insurance for the other against liability for the other's own fault. The statute "was designed," the court said, "to prevent parties with greater leverage in construction agreements (generally, owners and general contractors) from shifting exposure for their own negligence – or the costs of insuring against that exposure – to other parties (generally subcontractors) on a 'take-it-or-leave-it' basis." 189 Or. App. at 410. And "[w]hether the shifting allocation of risk is accomplished directly, *e.g.*, by requiring the subcontractor itself to indemnify the contractor for damages caused by the contractor's own negligence, or indirectly, *e.g.*, by requiring the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence, the ultimate – and statutorily forbidden – end is the same." *Id.* The Oregon Supreme Court eventually adopted the Court of Appeals opinion as its own. *See Walsh Construction Co. v. Mutual of Enumclaw*, 338 Or. 1, 104 P.3d 1146 (2005). So that holding is now the law in Oregon.

// // //

**Page 6 - Defendant's Cross-Motion for Summary Judgment**

228139781397

As noted above, the contract between NAES and PGE requires that NAES insure PGE. It provides in rather awkward language that NAES must carry several policies, including a CGL policy "covering all operations by or on behalf of [NAES] providing insurance for Bodily Injury Liability and Property Damage Liability." *See* Ex 1. (Doc. 8, pp. 19-20). It further provides that "[w]ith the exception of Workers' Compensation and Employers Liability[,] policies required herein shall * * * **name PGE, its directors, officers and employees as Additional Insureds by endorsement or otherwise**[.]" *See* Ex 1 (Doc. 8, p. 13) (bold in original).

Under this provision, NAES must insure PGE against liability for any injury or property damage arising out of its work for PGE, no matter whose negligence might be the cause, including PGE's, whether in whole or in part. To that extent, the provision runs afoul of ORS 30.140(1), which, as noted, invalidates any agreement by one party to insure the other against liability for the other's own fault, even in part. And if the provision is invalid under ORS 30.140(1), then PGE does not qualify as an insured under the endorsement to Liberty Mutual's policy, which, as noted, provides that any person is an insured that NAES agrees to insure. Under that endorsement, an agreement to insure is the trigger of coverage, so to speak. So, if NAES's agreement to insure a person is invalid, that person does not become an insured.

That is the precise holding in *Walsh*, cited above. In that case, an employee of a subcontractor suffered a work-related injury for which he sued the general contractor. The subcontract required the sub to procure insurance for the general for any job-related injuries, including injures caused by the general's own fault. And, in fact, a "blanket-style" endorsement to the sub's policy added as an "additional insured" anyone that the sub was under contract to insure. 189 Or. App. at 402-03. Accordingly, the general argued that, by virtue of the

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

endorsement, it was an insured under the sub's policy and entitled to a defense from the sub's insurer against the injured employee's claim.

The Court of Appeals disagreed. It held that the sub's agreement to insure the general against liability for its own fault was void under ORS 30.140(1). And because the agreement to insure was void, the general did not qualify as an insured under the endorsement. 189 Or. App. at 410. Therefore, the sub's insurer owed no duty to defend the general.

The same reasoning should apply here. If NAES's promise to insure PGE is invalid under ORS 30.140(1), because it requires insurance against injury or damage caused by PGE's own fault, even in part, then PGE is not an insured under the endorsement to NAES's policy with Liberty Mutual. And if PGE is not an insured, then Liberty Mutual owes no duty to defend it against Belgarde.

As explained below, the result is the same – no duty to defend PGE against Belgarde – even if it turns out that NAES's agreement to insure PGE is only partially invalid.


**2.     PGE is not an "insured" because NAES's agreement to insure is invalid**

As explained above, ORS 30.140(1) invalidates an agreement by A to insure B against liability for injury caused by B, even in part. But ORS 30.140(2) allows an agreement by A to insure B against liability for injury caused by A. The NAES–PGE contract requires NAES to insure PGE against all injuries arising out of NAES's work, without regard for who is at fault, NAES or PGE or someone else. That makes it an agreement by A to insure B against liability for injury caused by B *or* A. Thus, the contract appears to do both what ORS 30.140(2) allows – requires NAES to insure PGE against injuries caused by NAES – and what ORS 30.1401(1)

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

disallows – requires NAES to insure PGE against injuries caused by PGE.  In that sense, the agreement is overbroad.

A recent opinion by the Oregon Court of Appeals involved a similarly overbroad agreement to insure.  In *Montara Owners Assn. v. La Noue Development, LLC*, 259 Or. App. 657, 317 P.3d 257 (2013), *rev. allowed*, 355 Or. 567 (2014), a construction subcontract required the sub to insure the general against all injuries arising out of the sub's work, whether caused by the sub or by the general.  The sub argued that the agreement to insure was unenforceable because it did what ORS 30.140(1) prohibited, even if it also did what ORS 30.140(2) allowed.  The Court of Appeals ruled otherwise.  It said that, while "[t]he question is a close one," it was persuaded that an indemnity clause that does both what ORS 30.140(2) allows and what ORS 30.140(1) disallows is not void *in toto*.  259 Or App at 682.  Instead, the court said, "[a]n indemnity clause that offends ORS 30.140(1) because it requires a subcontractor to indemnify a contractor for the contractor's own negligence remains enforceable *to the extent that* it also requires the subcontractor to indemnify the contractor for the subcontractor's negligence." *Id.* (emphasis added).  In light of *Walsh*, the same logic should apply to agreements to insure:  A sub's promise to insure the general for any job-related injury is enforceable *to the extent that* it requires the sub to insure the general against liability for the *sub*'s negligence.  But it is unenforceable to the extent that it requires the sub to insure the general against liability for the *general*'s negligence, even in part.

The Oregon Supreme Court allowed review of *Montara Owners Assn.* and heard argument five months ago.  It might yet hold that overbroad agreements to insure are invalid *in toto* under ORS 30.140(1) – that they cannot be judicially re-written to do no more than what ORS 30.140(2) permits.  If the court rules that way, then NAES's agreement to insure PGE will

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

not be enforceable *to any extent* – which, in light of *Walsh*, means PGE will not qualify as an insured and PGE will not be entitled to a defense against Belgarde from Liberty Mutual. But even if the Supreme Court rules the other way – that is, even if it upholds the Court of Appeals's interpretation of ORS 30.140 – Liberty Mutual still would owe no duty to defend PGE in Belgarde's lawsuit, for reasons set forth below.

### 3.     PGE is not an "insured" for Belgarde's suit, at least

If the Supreme Court agrees with the Court of Appeals in *Montara Owners Assn.* that NAES's promise to insure is valid and enforceable to the extent it requires NAES to insure PGE against injuries caused by NAES's fault and not PGE's, then PGE will be insured under Liberty Mutual's policy to the same extent. But, even then, Liberty Mutual would owe no duty to defend PGE against Belgarde, because Belgarde's complaint does not allege that his injuries were caused by NAES. It alleges, instead, that his injuries were caused by PGE – and not just in part, but in whole.

Specifically, the complaint alleges that "Defendant" – meaning PGE – "was negligent in causing injury to Plaintiff" – meaning Belgarde – in several "particulars." Ex. 6 (Doc. 8, p. 36, ¶ 10). It also alleges that "[a]s a direct and proximate result of Defendant's negligence," Belgarde suffered various injuries and damages. *Id.* (Doc. 8, p. 37, ¶¶ 12-15). And it alleges that "Defendant violated its duty under the Employer Liability Law," which resulted in Belgarde's injuries. *Id.* (Doc. 8, p. 38-39, ¶¶ 20-21).

There are no allegations of fault by NAES, even though NAES is identified as Belgarde's employer. *Id.* (Doc. 8, p. 34, ¶ 1). That's probably because the complaint alleges that, "[a]t all times during his work at [PGE's] Boardman power plant, Defendant" – not NAES – "controlled,

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

228139781397

directed and monitored the work Plaintiff performed." *Id.* (Doc. 8, p. 34, ¶ 3); *see also id.* (Doc. 8, p. 38, ¶ 19) (alleging that "[d]efendant had control over the work that caused injury to Plaintiff"). In addition, the complaint alleges that "Defendant" – meaning, again, PGE – "supplied Plaintiff with" the device that caused his injury. *Id.* (Doc. 8, p. 35, ¶ 5). Referred to as an "air cannon," the device was "designed to propel the heating elements in to [sic] place using high[-]intensity air pressure." *Id.* It was "owned and maintained" by PGE, but, unfortunately for Belgarde, did not have a properly installed "main valve." As a result, the "safety valve" was "effectively disabled," and that allowed the cannon "to shoot backwards with great force" while Belgarde was using it, causing his injuries. *Id.* (Doc. 8, p. 36, ¶ 9).

Sidestepping these allegations, PGE argues that Liberty Mutual owes a duty to defend notwithstanding "ORS 30.140(1) and the holding of *Walsh*," because "PGE is *not seeking indemnity for a loss arising from PGE's sole fault*." Doc. 8, p. 9 (italics in original; underline added). According to PGE, the injuries for which PGE seeks indemnity were caused by NAES's negligence. *Id.* That, PGE says, is a "salient fact." Doc. 8, p. 10.

There are two obvious flaws in this argument. The first is that, for duty-to-defend purposes, the only salient facts are the "facts" alleged in the complaint for which a defense is sought. As explained *Ledford v. Gutoski*, 319 Or. 397, 399, 877 P.2d 80 (1994), "whether an insurer has a duty to defend a lawsuit depends on two documents: the complaint and the insurance policy." The insurer must defend, the court said, "if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Id.* at 399-400. Under this "eight-corners" rule, the insurer's duty to defend must be found within the four corners of its policy and the four corners of the complaint. Matter beyond

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

those documents – often referred to as "extrinsic evidence" – is immaterial for duty-to-defend purposes. [1]

It doesn't matter, then, whether PGE thinks that NAES was at fault in causing Belgarde's alleged injury, based on the extrinsic evidence appended to its motion. All that matters is what Belgarde alleges in his complaint. And as explained above, he alleges that PGE – not NAES – "controlled, directed and monitored" his work, Ex. 6 (Doc. 8, p. 34, ¶ 3), and that his injuries were caused by PGE's – not NAES's – negligence in the use of a defective air cannon that was owned, maintained, and supplied by PGE. Ex. 6 (Doc. 8, pp. 35-37, ¶¶ 5-11); *see also id.* (Doc.

---

[1] The court elaborated on that point as follows:

"In evaluating whether an insurer has a duty to defend, *the court looks only at the facts alleged in the complaint* to determine whether they provide a basis for recovery that could be covered by the policy:

"'If the facts alleged in the complaint against the insured do not fall within the coverage of the policy, the insurer should not have the obligation to defend. If a contrary rule were adopted, requiring the insurer to take note of facts other than those alleged, the insurer frequently would be required to speculate upon whether the facts alleged could be proved. We do not think this is a reasonable interpretation of the bargain to defend. It is more reasonable to assume that the parties bargained for the insurer's participation in the lawsuit only if the action brought by the third party, if successful, would impose liability upon the insurer to indemnify the insured.' * * *

"An insurer should be able to determine *from the face of the complaint* whether to accept or reject the tender of the defense of the action. * * *"

*Id.* at 400 (citations omitted; emphasis added); *see also Blohm v. Glens Falls Ins. Co.*, 231 Or 410, 417-18, 373 P2d 412 (1962) (insured cannot rely on unpled facts to show coverage).

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

8, p. 38, ¶ 19) (alleging that "[d]efendant had control over the air cannon which injured plaintiff").[2]

The other flaw in PGE's argument is its assertion that ORS 30.140(1) doesn't apply unless PGE is "seeking indemnity for a loss arising from PGE's sole fault." In fact, ORS 30.140(1) applies to claims for indemnity for injury "caused in whole *or in part* by the negligence of the indemnitee." (Emphasis added.) Thus, ORS 30.140(1) would bar PGE's claim even if extrinsic evidence were available to show that, despite Belgarde's allegations, his injuries were caused by NAES's negligence *in addition to* PGE's negligence.

In the end, then, it shouldn't matter whether NAES's promise to insure PGE is enforceable to the extent it covers liability for injuries caused by NAES, based on the Court of Appeals opinion under review in *Montara Owners Assn*. In that event, PGE would be insured to the same extent under the endorsement to Liberty Mutual's policy. But Liberty Mutual would not owe a duty to defend PGE against Belgarde's complaint, which does not allege fault by NAES, but only by PGE.

---

[2] By the way, the extrinsic evidence that PGE relies on consists of excerpts from the transcript of Belgarde's deposition in the underlying case, to which Liberty Mutual is not a party, Ex. 10, and a document that PGE represents to be a handwritten statement by Belgarde, offered as an exhibit in that deposition. Ex. 11. These documents are unauthenticated and hearsay, and they contain hearsay. They are not admissible against Liberty Mutual in this action, and Liberty Mutual objects to them and moves the court to strike them.

If the court decides, instead, to consider PGE's extrinsic evidence, then Liberty Mutual respectfully requests that the court defer ruling on the pending motions, as provided in FRCP 56(d), until Liberty Mutual has had time to obtain extrinsic evidence of its own. At this time, no discovery has been conducted; the court has not even held a Rule 16 conference yet. It would not be fair to decide these motions based on extrinsic evidence that only PGE has had an opportunity to obtain.

Of course, Liberty Mutual's position is still that such evidence is not a relevant to the duty to defend question.

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

An opinion by this court is directly on point. In *Richardson v. Howard S. Wright Const. Co.*, CV-05-1419-ST, 2007 WL 1467411 (D. Or. May 18, 2007), a subcontractor's employee sued the general contractor in this court for an on-the-job injury. The subcontract required the sub to insure the general, and the sub's policy included a blanket additional-insured endorsement that, as here, covered anyone the sub agreed to insure. When the sub's insurer declined to defend the general, the general filed a third-party claim against the insurer, alleging breach of the policy. The sub's insurer argued that ORS 30.140(1) invalidated the agreement to insure and, therefore, that the general was not an insured under the endorsement. This court held that "even if the language of the subcontract is sufficiently broad to require indemnification or insurance for injury caused in whole or in part by [the general], it is not void," but "[i]nstead, it is only unenforceable in part." 2007 WL 1467411, at *5. Specifically, the court held that, under ORS 30.140(2), the agreement to insure was enforceable to the extent of the fault of the sub and, therefore, that the sub's policy could lawfully cover the general to the same extent.

But the judge went on to hold that the sub's insurer owed no duty to defend the general against the sub's employee, because the employee's complaint alleged that his injuries were caused by the general, not the sub. Relying on the "eight corners" rule, the court rejected the general's offer of evidence that the sub was partly to blame for the employee's injuries. 2007 WL 1467411, at *6-8.

This court came to the same conclusion in a later case involving similar facts, *Clarendon Nat. Ins. Co. v. Am. States Ins. Co.*, 688 F. Supp. 2d 1186 (D. Or. 2010). In that case, the court, citing *Richardson*, again held that, notwithstanding ORS 30.140, a sub's promise to insure a general was enforceable to the extent that it covered liability for injuries caused by the sub, 688

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

228139781397

F. Supp. 2d at 1190;[3] that the general was insured to the same extent under the blanket-style endorsement to the sub's policy, *id.*; and that the sub's insurer did not owe a duty to defend the general in a lawsuit brought by the sub's employee who was injured on the job, because the employee's complaint alleged that the general alone was at fault for his injuries. *Id.* at 1191.

*Arch Ins. Group, Inc. v. Travelers Prop. Cas. Co.*, 03:10-CV-801-HZ, 2011 WL 6778757 (D. Ore. Dec. 23, 2011), is likewise on point. In that case, the court held that a sub's insurer owed no duty to defend the general contractor in a lawsuit brought by the sub's employee for a work-related injury, because the employee's complaint alleged that the general "retained the right to and had actual control of the 'work, instrumentality or condition' that caused harm to" the employee, 2011 WL 6778757 at *1, and because the employee's allegations of fault by the general did "not implicate" the sub. *Id.* at *3. As the court explained, the injured employee "made it clear" in his pleading that the general (and another sub) "were the parties responsible" for his injuries. *Id.* The same goes for this case. As explained above, Belgarde's complaint alleged that PGE had control of the workplace and his work, as well as the instrumentality that caused his injury – the air cannon with the improperly-installed main valve. The allegations don't implicate NAES, which is why Belgarde makes clear that PGE is the responsible party.

### 4.     Summary

Liberty Mutual owes no duty to defend PGE against Belgarde's complaint despite the additional-insured endorsement and NAES's agreement to insure PGE, because the agreement to insure, which triggers coverage under the endorsement, is invalid under ORS 30.140 – if not in

---

[3] *Richardson* and *Clarendon* were decided before the Oregon Court of Appeals decision in *Montara Owner's Assn.*, which didn't cite either of them, and which is now under review in the Oregon Supreme Court, as explained earlier.

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

full, than at least to the extent it requires insurance for injuries caused by PGE's own negligence, which is what is alleged in Belgarde's complaint.[4]

**B.      No Duty to Indemnify – At Least Not Yet**

As noted above, the policy provides that Liberty Mutual "will pay those sums that the insured becomes legally obligated to pay as damages" for a covered bodily injury. Ex. 5 (Doc. 8, p. 32). Even if PGE were an "insured," it is not presently obligated – and might not ever become obligated – to pay any damages in the Belgarde lawsuit, which is still pending in state court (it's on call for trial in July of this year). In its answer, PGE denies liability and sets up several affirmative defenses, presumably in good faith. It's possible that Belgarde will recover nothing from PGE and, therefore, that there will be nothing for Liberty Mutual to indemnify, *even if PGE were found to be an insured*.

Under Oregon law, PGE cannot seek a judicial declaration of Liberty Mutual's indemnity obligations in advance of a something to indemnify. *Hale v. Fireman's Fund Ins. Co. et al.*, 209 Or. 99, 302 P.2d 1010 (1956), is right on point. The plaintiff in that case was injured in an accident that was caused, he alleged, by Smith, who was insured by two different insurers. He filed an action for damages against Smith, and then, before that case came on for trial, filed a declaratory-relief action against the insurers, seeking a declaration that they "will be required to pay such judgment, if any, which he may recover" against Smith. *Hale*, 209 Or. at 101. The

_____

[4] Contrary to PGE's suggestion, at pages 10-11 of its motion, Liberty Mutual does not contend that NAES's agreement to insure is void under ORS 656.018, a part of Oregon's worker's compensation law. In *Montgomery Elevator Co. v. Tuality Community Hosp.*, 101 Or. App. 299, 790 P.2d 1148, *rev. den.*, 310 Or. 243 (1990), the court held that that statute precludes agreements to indemnify, but not agreements to insure. But, as the court held in *Walsh*, 338 Or. at 6, *Montgomery* is "inapposite" when it comes to contracts subject to ORS 30.140, because that statute regulates both types of agreements.

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

trial court dismissed the action, and the Supreme Court affirmed, concluding that the plaintiff's

allegations did not "submit a justiciable controversy which is ripe for judicial pronouncement,"

because "the rights of the plaintiff [under the policy] are contingent upon the happening of some

event which cannot be forecast and may never take place" – namely, the entry of a judgment for

the plaintiff and against Smith. *Id.* at 103-04. The court went on to say:

> "It must be apparent that the rights which the plaintiff says he possesses
> against the two defendant insurance companies are contingent. He may never win
> a judgment in the tort action. The defendant insurance companies are not required
> to do anything concerning the plaintiff until a judgment is entered in his favor
> against the Smiths and remains unsatisfied for thirty days. The situation does not
> reveal a controversy of sufficient immediacy and reality to warrant the issuance of
> a declaratory judgment."

*Id.* at 113 (citations and internal quotation marks omitted).

In sum, PGE's duty-to-indemnify claim is premature and non-justiciable for want of a

judgment against PGE.[5]

Even if the claim were ripe, PGE hasn't proved it. It has offered some evidence – none

of it admissible, *see* note 3 *supra* – that NAES "played a role in causing the underlying

accident." Doc. 8, p. 13. (At least, that's how PGE views that evidence.) But that evidence

doesn't prove that PGE did not also play a role – that its negligence didn't contribute with

NAES's in causing Belgarde's injuries. As noted above, ORS 30.140(1) would preclude

coverage for PGE under NAES's policy with Liberty Mutual if PGE were liable for those

injuries, even in part. PGE's proof falls short of what's needed to prove this claim.

// // //

---

[5] The same is not true for the duty-to-defend claim, discussed earlier. That claim is ripe,
because, at present, there is something to defend: Belgarde's lawsuit. *See Menasha Forest
Products Corp. v. Curry County Title, Inc.*, 234 Or. App. 115, 121-22, 227 P.3d 770 (2010), *aff'd
in part, rev'd in part on other grounds*, 350 Or. 81, 249 P.3d 1265 (2011) (discussing
justiciability and the duties to defend and indemnify).

**Cosgrave Vergeer Kester LLP**
**Attorneys**
**888 SW Fifth Avenue, Suite 500**
**Portland, Oregon 97204**
**Telephone: (503) 323-9000 Facsimile: (503) 323-9019**

228139781397

# IV. CONCLUSION

This court should conclude that Liberty Mutual owes no duty to defend PGE in the underlying case, and that PGE's duty-to-indemnify claims are premature. To that extent, the court should deny PGE's motion for summary judgment and grant this cross-motion.

DATED: March 30, 2015.

Respectfully submitted,

COSGRAVE VERGEER KESTER LLP

*/s/ Thomas M. Christ*

Thomas M. Christ
Paul A. C. Berg

228139781397

Cosgrave Vergeer Kester LLP
Attorneys
888 SW Fifth Avenue, Suite 500
Portland, Oregon 97204
Telephone: (503) 323-9000 Facsimile: (503) 323-9019

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **Defendant Liberty Mutual Insurance Company's Cross-Motion for Summary Judgment** on the date indicated below by:

☐     mail with postage prepaid, deposited in the US mail at Portland, Oregon,

☐     hand delivery,

☐     facsimile transmission,

☐     overnight delivery,

☒     electronic filing notification.

I further certify that said copy was delivered as indicated above and addressed to said attorney at the address listed below:

Daniel K. Reising
Fucile & Reising LLP
800 NW Sixth Avenue, Suite 211
Portland, OR  97209

       Attorneys for Plaintiff

       DATED:  March 30, 2015


               */s/ Paul A. C. Berg*
               Paul A. C. Berg