**DANIEL K. REISING,** OSB No. 96410
dan@frllp.com
Fucile & Reising LLP
Portland Union Station
800 NW 6th Ave., Ste 211
Portland OR 97209
Telephone: 503.224.4894
Facsimile:  503.224.4332

Attorneys for Portland General
Electric Company

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation,

      Plaintiff,

    v.

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,

      Defendant.
_____

No. 3:15-cv-00217 HZ

**PORTLAND GENERAL ELECTRIC
COMPANY'S RESPONSE AND REPLY
ON CROSS-MOTIONS FOR SUMMARY
JUDGMENT**

## INTRODUCTION

      Three subjects Liberty Mutual fails to address establish PGE's right to its

requested relief.  1.  PGE is an "insured";  2. The underlying complaint alleges facts

demonstrating NAES was at fault; and, 3. The evidence that Liberty Mutual owes PGE a

duty of indemnity is unrebutted.  Sections A through C of the Discussion below address

the first issue, Section D addresses the second and Sections E through G the third.

1    PORTLAND GENERAL ELECTRIC COMPANY'S
    RESPONSE AND REPLY ON  CROSS-MOTIONS
    FOR SUMMARY JUDGMENT

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

**DISCUSSION**

**A.    The NAES Contract and Indemnification Clause and Liberty Mutual's Straw-man Argument.**

Liberty Mutual attempts to cobble an "overbroad" indemnity provision out of the liability insurance requirements of the PGE/NAES contract.  Liberty Mutual fails to advise the Court that the parties' agreement contains a separate indemnity provision that specifically spells out NAES's indemnity obligation.  Article 26 ("Indemnification") is unaffected by ORS 30.140, regardless of Liberty Mutual's misdirected focus on the contract's insurance requirement or how the Oregon Supreme Court might decide any case now pending.  It provides:

> ". . . Contractor shall indemnify, defend and hold harmless [PGE] . . . from any and all claims, demands, suits, losses, costs and damages of every kind and description, including attorney's  fees, . . . brought or made against or incurred by [PGE] **resulting from, arising out of, or in any way connected with any act, omission, fault or negligence of the Contractor** . . . CONTRACTOR'S INDEMNITY OBLIGATION UNDER THIS ARTICLE SHALL NOT EXTEND TO ANY LIBIALITY CAUSED BY THE SOLE NEGLIGENCE OF [PGE]. Ex. 13 (emphasis added, capitalization in original).[1]

ORS 30.140(1) voids indemnity provisions in construction contracts that require indemnification for damage arising out of "death or bodily injury to persons or damage to property caused in whole or in part by the **negligence of the indemnitee**."  ORS 30.140(1) (emphasis added).  The section does not, however, "affect any provision in a construction agreement that requires . . . [indemnity]  to the extent [the injury] arises out of **the fault of the indemnitor** . . ."  ORS 30.140(2) (emphasis added).  NAES's

---

[1] Article 26 is not relevant to PGE's motion for summary judgment and was not included in its submissions.  It is reproduced as Exhibit 13 to this brief.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

indemnity obligation passes muster under both clauses.  Indemnity is only triggered

when the injury is due to NAES's act, omission, fault or negligence and NAES owes no

duty to indemnify for PGE's sole negligence.

But Liberty Mutual's counsel argued a case before the Oregon Supreme Court

that involved different underlying facts—most notably what Liberty Mutual calls an

"overbroad" indemnity provision.  Liberty Mutual concedes the Oregon Supreme Court

has not accepted its construction of the statute.  Liberty Mutual does not even address

how it thinks a ruling by the Supreme Court could possibly invalidate an insurance

policy it has already issued or why Liberty Mutual even has standing in this proceeding

to challenge NAES's contractual obligation to insure PGE.  But Liberty Mutual's defense

here is to pound the square peg of the current dispute into the round hole of that

pending, undecided, case—*Montara Owners Association v. La Noue Development,*

*LLC*, 259 Or. App. 657, 317 P.3d 257 (2013), *rev. allowed*, 355 Or. 567 (2014).

So, rather than address the indemnity provision in the PGE/NAES contract,

Liberty Mutual drafts a provision that suits its purposes.  And, Liberty Mutual fails to

acknowledge, much less reconcile, the distinguishing facts of *Montara Owners*

*Association.*  These include that the general contractor was sued for construction

defects, not death, personal injury or property damage and, in turn, sued its

subcontractor seeking, among other things, economic damages; the relevant

indemnification provision (not an insurance requirement in the contract) required the

subcontractor to indemnify the general contractor **for the general contractor's own**

**negligence**; the general contractor's complaint alleged a common law indemnity claim

fucile & reising LLP
800 nw 6ᵗʰ ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

unaffected by ORS 30.140[2]; and, no issues of insurance coverage are involved in the dispute. *Montara Owners Association*, 259 Or. App. at 660-63 and 677.

The PGE/NAES contract requires NAES to purchase commercial general liability coverage for **all operations by or on NAES's behalf** (not PGE's) covering bodily injury and property damage liability and to make PGE an additional insured on that policy. Ex. 1 at 3 and 4. The term "indemnify" is only used in Article 28 in relation to future subrogation rights, although the provision does require NAES's insurer to "defend any suit against the Additional Insureds." Ex. 1 at 5.

No verbiage in Article 28 states directly, or even implies, that NAES must indemnify PGE against harm, "no matter whose negligence might be the cause, including PGE's, whether in whole or in part." Dkt. 11 at 7. Those words are provided by counsel, not the contract. No matter how much Liberty Mutual wishes, this action is not about PGE seeking indemnity for its own negligence. The insurance provision is not an indemnity provision and Liberty Mutual's strained interpretation of a contract to which it is not even a party should be rejected.

## B.  Liberty Mutual is Estopped from Arguing PGE Is Not an Insured.

Liberty Mutual's defense relies on the PGE/NAES contract, rather than the insurance policy, regarding which PGE has asked the Court to declare the parties' respective rights and obligations. Regardless whether the indemnity provision of the PGE/NAES contract is theoretically enforceable by the parties to that contract, the fact is NAES procured insurance on PGE's behalf and Liberty Mutual's agent issued PGE a Certificate of Insurance establishing that coverage. There is no evidence NAES

---

[2] All other things being equal, PGE also has a common law right to indemnity from NAES.

fucile & reising LLP
800 nw 6ᵗʰ ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

withdrew the coverage, or would have any intent to do so (even if it could) under the circumstances. Liberty Mutual has no basis to even ask this Court to interpret the PGE/NAES contract and is estopped now from denying PGE is an insured.

Liberty Mutual is not a party to the PGE/NAES contract. It has not made a showing it has standing to raise any statutory defenses NAES might have to its indemnity obligation to PGE. Of course, PGE is not seeking indemnity from NAES and the present action is not an appropriate proceeding to determine NAES's indemnity obligations under the separate contract with PGE. *Smith v. Truck Ins. Exchange, Inc.*, 242 Or. App. 202, 214-15, 255 P.3d 615 (2011) (Party to contract is necessary for adjudication of interest that would be affected by declaratory judgment).

This action is, however, the appropriate proceeding to determine PGE's rights and Liberty Mutual's obligations under the Certificate of Insurance and policy that names PGE as an additional insured. And, the Certificate of Insurance is much more significant than Liberty Mutual lets on.[3] Oregon authority establishes, not only that PGE is an additional insured, but that Liberty Mutual is estopped from contesting that fact.

---

[3] Counsel for Liberty Mutual has previously argued in this District that a Certificate of Insurance is "informational only" and not evidence of coverage. Judge Jones declined to reach the issue, effectively rejecting it in *Clarendon National Insurance Company v. American States Insurance Company*, 688 F.Supp.2d 1186, 1191 (D. OR. 2010). There, consistent with the present facts, the Court found the insurance company was bound to provide coverage under a Certificate of Insurance and policy defining a general contractor as an additional insured under a commercial general liability policy. *Id.* Undeterred, Liberty Mutual makes the same argument here, relying on two cases that are entirely inapposite. In one, the question was whether providing a certificate of insurance only as proof of insurance, rather than the complete policy, voided the policy's exclusion for death by drug overdose. The Court of Appeals reached the unremarkable conclusion that the certificate of insurance could not nullify an otherwise enforceable exclusion. *Baylor v. Continental Casualty Co.*, 190 Or.App. 25, 33, 78 P.3d 108 (2003). In the second case, whether Illinois' Workers Compensation Law was an injured plaintiff's exclusive remedy was not affected by the fact that the defendant was identified as a "certificate holder" on a workers' compensation policy issued to the plaintiff. The court concluded on the underlying facts that plaintiff was not defendant's employee and the certificate of insurance was not evidence to the contrary. *Stallworth v. Sam Yoder Trucking*, 109 Or.App. 280, 285, 819 P.3d 316 (1991).

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

Liberty Mutual has not even tried to present evidence that the Certificate of Insurance was not issued by its authorized agent. The Certificate is signed by a representative of Marsh USA, Inc., which is identified on page 5 of the policy NAES provided to PGE as the policy "producer." Ex. 14 at 5. Under Oregon law, as the "producer" Marsh is Liberty Mutual's agent. ORS 744.078.

Even more important, the Certificate was provided to PGE as evidence that NAES had procured insurance for PGE. PGE relied upon the Certificate of Insurance in its course of dealing with NAES. If Liberty Mutual did not intend to insure PGE, it should not have issued the Certificate. For those reasons, Liberty Mutual is estopped from arguing PGE is not an insured. The Oregon Supreme Court dealt with a similar issue *Hayes Truck Lines, Inc. v. Investors Ins. Corp.*, 369 Or. 565, 572-73, 525 P.2d 1289 (1974). There, the insurer's agent issued a Certificate of Insurance to an applicant for insurance, but when a claim was made the insurer took the position that no policy was actually issued. The court held that the Certificate of Insurance, relied upon by the insured, estopped the insurance company from subsequently claiming there was no policy. *See also McDaniel v. Ins. Co. of Oregon*, 243 Or. 1, 6, 410 P.2d 814 (1966) (same); *United Pac. Ins. v. Meyer*, 305 F.2d 107, 118 (9th Cir. 1962) (insurer estopped from denying subcontractor was additional insured on general contractor's liability policy after issuing certificate of insurance identifying subcontractor as additional insured). Here, too, having issued the Certificate of insurance, Liberty Mutual is estopped from denying coverage.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

**C.    ORS 30.140 Does Not Apply to Mr. Belgarde's ELL Claim.**

Mr. Belgarde makes two separate legal claims against PGE.  One for negligence.

The other for violation of Oregon's Employer Liability Law.  If the Court is convinced by

Liberty Mutual's argument and concludes that Article 28 of the PGE/NAES contract is

an "overbroad" indemnification provision as argued by Liberty Mutual's counsel in

*Montara Owners Association* (and that the Oregon Supreme Court will accept that

argument and then apply *Walsh* to invalidate the insurance policy, and Liberty Mutual

has standing to ask this Court to decide NAES's contractual obligations), the Court

should nevertheless find an enforceable duty to indemnify PGE on the underlying ELL

claim.  The language of ORS 30.140(1) compels this result.

As noted above, ORS 30.140(1) voids a provision in a construction contract

requiring indemnification for "the negligence of the indemnitee."[4]  But the ELL claim is

not based on PGE's negligence.  "The ELL imposes a heightened statutory standard of

care on a person or entity who either is in charge of, or responsible for, any work

involving risk or danger."  *Woodbury v. CH2MHill, Inc.*, 335 Or. 154, 159, 61 P.3d 918

(2003).  The ELL requires the use of "every device, care and precaution that is

practicable to use for the protection and safety of life and limb."  ORS 654.305.  A party

can be in violation of its statutory duty under the ELL, without also being negligent.  *E.g.*

*Boothby v. D.R. Johnson Lumber Co.*, 341 Or. 35, 137 P.3d 699 (2006) (discussing

different standards of ELL liability and common law negligence).  To the extent this

Court determines that PGE cannot be indemnified for either its own or NAES's alleged

---

[4] By contrast, ORS 30.140(2) exempts from the sweep of ORS 30.140(1) any claims arising out of the indemnitor's "fault" rather than merely its negligence.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

negligence owing to ORS 30.140(1), it should still conclude that PGE is entitled to be indemnified (i.e. covered by the insurance policy) for its (and NAES's) alleged violation of the ELL's heightened statutory standard of care.

**D.    Liberty Mutual's Duty to Defend is Premised on Facts Alleged in the Complaint.**

Another of Liberty Mutual's straw-man arguments is that PGE relies upon extrinsic evidence to support its argument that Liberty Mutual owes it a duty of defense. This is untrue.  Liberty Mutual's duty to defend PGE arises solely from the allegations of Mr. Belgarde's complaint.  First, simply, PGE is an insured under the policy and is being sued for Mr. Belgarde's bodily injury, which is undeniably a covered claim.  There is no reason to limit PGE to coverage only for NAES's fault.  PGE is an insured and is entitled to a defense. *See Hartford Accident and Indemnity Company v. U.S. Natural Resources, Inc.*, 897 F.Supp 466, 471 (D. Or. 1995) (additional insured entitled to coverage to same extent as named insured).

Second, ORS 30.140(1), as interpreted by Liberty Mutual, would only void NAES's, and by extension Liberty Mutual's, indemnity obligation to PGE.  The statute says nothing of a contractor's or its insurer's **duty to defend** an action—a duty separately set forth in Article 28 of the PGE/NAES contract.  Ex. 1 at 5.  In *Walsh* the Supreme Court's focus was on the meaning of the term "indemnify" used in ORS 30.140(1).  The court concluded that an agreement to indemnify encompasses agreements where one party is obligated to assume "**financial responsibility for the other party's liability**." *Walsh Construction Co. v. Mutual of Enumclaw*, 338 Or. 1, 7,

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

104 P.3d 1146 (2005) (emphasis added).  There is no discussion in *Walsh* of whether ORS 30.140(1) even touches upon the separate duty to defend.

Turning to the allegations of the complaint, Mr. Belgarde did not name NAES as a defendant in the underlying action because NAES is immune from liability.  ORS 656.018(a)(1).  As Judge Jones noted in *Clarendon*, it is not surprising Mr. Belgarde did not expressly allege his employer caused his injury for that very reason.  *Clarendon National Insurance Company v. American States Insurance Company*, 688 F.Supp.2d 1186, 1192 (D. Or. 2010).  Rather, "the more important question is whether the allegations **raise by implication the possibility** that [the employer] was at fault in a way that triggers coverage."  *Id.* at 1192 (emphasis added).  *See also Ledford v. Gutoski*, 319 OR 397, 399-400, 877 P2d 80 (1994) ("The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage.") (emphasis in original).

Even if the Court is inclined to limit policy coverage to what would be available to NAES for its own fault, and ignore the distinction between indemnity and a duty to defend, there are ample factual allegations in the underlying complaint that raise by implication (and directly) that NAES was at fault as that term is used in ORS 30.140(2).  Mr. Belgarde alleges in Paragraph 1 he was a boilermaker employed by NAES to work at Boardman. Ex. 6 at ¶ 1.  He alleges PGE is engaged in the production and sale of power (Complaint ¶ 2) and his work was controlled, directed and monitored by PGE (Complaint ¶ 3).[5]  These allegations raise, both directly and by implication, the possibility—indeed, if proven, the certainty—that NAES was at fault in permitting its

---

[5] PGE denies it controlled, directed or monitored Mr. Belgarde's work.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

employee to be told how to do his job by a company engaged in the production and sale of power.  Mr. Belgarde is a boilermaker and PGE is not a contractor.  Mr. Belgarde makes no allegations that even imply PGE was capable of directing the maintenance project it hired NAES to perform, or his work as a boilermaker.

Mr. Belgarde also alleges PGE was at fault in designing/commissioning an inherently dangerous device, in failing to maintain the device in proper and safe working order, in allowing plaintiff to use the device and in failing to properly install a safety catch on the main valve of the device.  *Id.* ¶ 10.  These allegations imply, at least, that NAES allowed Mr. Belgarde to use a device that was inherently dangerous and not properly maintained.

Under Oregon common law, an employer owes a duty of care to its employees to provide a safe workplace and warn of dangerous conditions.  *Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 131, 23 P.3d 333 (2001).  An employer also owes a duty to inspect and furnish its employees with safe equipment, free of defects.  *Mildenberger v. Cargill, Inc.*, 220 Or. 629, 636-37, 350 P.2d 413 (1960).  It is certainly foreseeable that allowing a power producer to direct a maintenance project, and, in turn, direct NAES's boilermaker employee as to what tools to use and how to do his job, is NAES's fault.  *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17-18, 734 P.2d 1326 (1987) (discussing roles of duty and foreseeability in negligence action).  As broadly alleged in the underlying complaint, this is what caused Mr. Belgarde's injury.

Given the allegation that NAES was his employer, the complaint also raises by implication the possibility that NAES assigned Mr. Belgarde to install the heavy heating elements (Ex. 6 ¶ 4) and instructed him to move the air cannon from station to station.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

Ex. 6 ¶ 7.  The complaint does not specify who told him to take these actions.  As pled, it could have been PGE (with NAES's negligent acquiescence as pointed out above), or it could have been NAES.  Either way, the facts imply that NAES was at least possibly at fault.

Finally, and very specifically, Mr. Belgarde contends:

> "On May 2, 2012, Plaintiff was working with a co-worker.
> The lever of the main valve of the air cannon caught in a
> loop in Plaintiff's work overalls while the air cannon was
> being moved, which activated the air supply to the air
> cannon.  With the noise of the activation, Plaintiff's co-worker
> instinctively reached for the safety valve and closed it which
> caused the air cannon to shoot backwards with great force,
> causing severe injury to plaintiff. . . . "  Ex. 6 at ¶ 9.

Mr. Belgarde's allegations state directly that both he and his co-worker were at fault in the specific acts leading directly to his injury—i.e. Mr. Belgarde in looping the main valve in his overalls and allowing the valve to accidentally open; and his co-worker in shutting off the safety valve.  Clearly, both occurrences were causes-in-fact of Mr. Belgarde's injury.  *Fazzolari*, 303 Or. at 13; *Towe v. Sacagawea, Inc.*, 357 Or. 74, 87, ___ P.3d ___ (2015) (cause-in-fact is assessment of actual causal link between action and harm).  As the employer, NAES is responsible for both Mr. Belgarde's and his co-worker's fault.  *Chesterman v. Barmon*, 305 Or. 439, 442, 753 P.2d 404 (1988).

As Liberty Mutual points out, Mr. Belgarde also alleges that his injuries were a "direct and proximate" result of PGE's negligence and that PGE violated the Employer Liability Law.  Dkt # 11 at 10.  These are merely the conclusions of law Mr. Belgarde would have the state court and jury draw from his factual allegations.  And, they do not

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

erase the implication of his factual allegations that Mr. Belgarde's injury was at least possibly NAES's fault.

**E.       The Extrinsic Evidence is Admissible on Summary Judgment.**

Exhibits 10 and 11 to PGE's motion are excerpts from Joel Belgarde's deposition transcript taken in the underlying action and a handwritten letter he prepared to detail the circumstances of his injury.  FRCP 56(c)(2) permits a party to object to material cited in support of a motion for summary judgment on the basis that the material "cannot be presented in a form that **would be admissible** in evidence."  (Emphasis added). This Rule was adopted by 2010 Amendments.  Even prior to adoption of the 2010 amendments, the Ninth Circuit rule was that a party on summary judgment did not have to produce evidence in a form that would be admissible at trial, as long as the requirements of Rule 56 were met.  *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001).  The intent of the amended Rule is to provide for the equivalent of a trial objection to evidence at the pretrial stage of the proceedings.  FRCP 56(c)(2) 2010 Advisory Committee Notes.  When such objection is made, the burden is on the proponent of the materials to either show that the material is admissible as presented "or to **explain the admissible form** that is anticipated."  *Id* (emphasis added).

As stated by Magistrate Judge Stewart:  "First, the content, not the form, determines the admissibility of evidence at the summary judgment stage."  *Doby v. Sisters of St. Mary of Oregon Ministries Corp.*, 2014 WL 3943713 * 3 (D. Or. April 11, 2014).  *See also Metcalf v. Blue Cross and Blue Shield of Michigan*, * 10 (D. Or. Aug. 5, 2013) (demonstration that evidence will not lack foundation if and when offered at trial suffices under FRCP 56(c)(2)).

PORTLAND GENERAL ELECTRIC COMPANY'S
RESPONSE AND REPLY ON  CROSS-MOTIONS
FOR SUMMARY JUDGMENT

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

Here, in response to Liberty Mutual's objection that Joel Belgarde's deposition was taken in another matter and, therefore, not admissible at trial under FRCP 32, PGE explained that at trial Mr. Belgarde will be a witness at trial.  Reising Dec. Ex.1.  He is a resident of this District, subject to the subpoena power of the Court and will give live testimony when this case is tried.  All other things being equal, the deposition transcript will not be evidence at trial.[6]  But Mr. Belgarde's testimony in another form will be evidence at trial and Liberty Mutual has no basis to contend that the content of that testimony will differ in any material way from his testimony in the state court deposition.

Likewise, in response to Liberty Mutual's authentication and hearsay objection to a handwritten letter prepared by Mr. Belgarde, PGE explained that Mr. Belgarde would authenticate the letter and would testify that he prepared it soon after he learned he had been injured.  *Id.*  The letter was part of the process for Mr. Belgarde to receive workers' compensation benefits.  It is a recorded recollection and was used to refresh his recollection during his deposition (FRE 803(5)) and is a business record.  (FRE 803(6)).  *Id.*  It is not hearsay.

In spite of PGE's explanations of the "admissible form that is anticipated" for the evidence, Liberty Mutual refused to withdraw its objections to the submissions.  As PGE's counsel explained during the Rule 16 scheduling conference with the Court, PGE does not want an evidentiary ruling to create an arguable question of fact for trial. The

---

[6] FRCP 32(a)(8) permits a deposition in another matter to be used **as evidence** at trial where the same parties, representatives or successors in interest are involved. The point of this action is for a declaration that Liberty Mutual is PGE's successor in interest as to the underlying state court action.  PGE was present during Mr. Belgarde's deposition.  Thus, even under Rule 32 Mr. Belgarde's deposition may be admissible as evidence at trial, depending on the Court's ruling on the present motion and cross-motion.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

parties both have stated, at least orally, that there are no facts in dispute.  Liberty

Mutual's request that certain facts be excluded from consideration belies that position.

Out of an abundance of caution, and to avoid any argument that a question of

fact remains for trial, PGE obtained a declaration from Mr. Belgarde transforming the

excerpts from his deposition and the handwritten letter into a declaration made under

penalty of perjury in this proceeding.  PGE now relies on that declaration in support of

its motion.  There is no argument against the testimony's admissibility.  Declarations

based upon the personal knowledge and certified to be true under penalty of perjury,

properly support a motion for summary judgment.  FRCP 56(c)(1)(A) and 56(c)(1)(4).

**F.      The Extrinsic Evidence is Unrebutted and Establishes a Right to Indemnity.**

Discovery in the underlying action has, without exception, disproven all factual

allegations of fault directed at PGE in Mr. Belgarde's complaint.  Importantly, Mr.

Belgarde admits PGE did not control, direct and monitor his work, as alleged in

paragraph 3.  And, he admits PGE did not supply him with the air cannon, as alleged in

paragraph 5.  The air cannon was supplied, his work was controlled and direction was

given to him by his foreman at NAES.  Mr. Belgarde was not trained on the safe use of

the tool by NAES. Ex. 10 52:3-53:10.  Liberty Mutual does not object to the workers

compensation payment summary (Ex. 12), which establishes, in addition to NAES's

"fault" for which its workers compensation insurer paid a claim, that Mr. Belgarde has

substantial damages as a result of the injury.

Again, belying its stated position that there are no disputed facts, Liberty Mutual

asks the Court for time to take discovery if the Court considers Mr. Belgarde's

deposition excerpts and handwritten letter.  In order to obtain this relief, however, FRCP

14      PORTLAND GENERAL ELECTRIC COMPANY'S
        RESPONSE AND REPLY ON  CROSS-MOTIONS
        FOR SUMMARY JUDGMENT

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

56(d) requires that Liberty Mutual show by affidavit or declaration that "**for specified reasons** it cannot present facts essential to justify its opposition." FRCP 56(d) (emphasis added). Liberty Mutual has not tried to make this showing. There are no facts it will learn in discovery that can avoid NAES's own fault as detailed by Mr. Belgarde in Exhibits 10 and 11. Indeed, Liberty Mutual has failed to present any facts in rebuttal to those presented by PGE, and the Court should consider PGE's factual submissions undisputed. FRCP 56(e)(2) and (3).

**G.    It is Not Premature to Declare the Parties' Respective Rights.**

Federal law creates the remedy sought – a declaration that Liberty Mutual owes PGE a duty of indemnity under the policy. 28 U.S.C. § 2201(a). PGE is not asking the Court to order Liberty Mutual to pay indemnity. If, and when, PGE pays Mr. Belgarde in connection with the underlying action, PGE will seek indemnity from Liberty Mutual. But, until that happens, PGE is entitled to a declaration by this Court of the "rights and other legal relations" of the parties. *Id.* The Declaratory Judgment Act is exactly the statutory vehicle to determine an insurer's duty to defend **and indemnify**, even where the underlying action is still pending. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed.2d 826 (1941) (That complaint seeking declaration of insurer's duty to defend and indemnify insured presents controversy under Declaratory Judgment Act "is plain.") *See also Home Indem. Co. v. Stimson Lumber Co.*, 229 F.Supp.2d 1075, 1079 (D. Or. 2001), *citing American States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994) (District court properly exercises jurisdiction to resolve insurance coverage dispute when underlying action is pending in state court).

PORTLAND GENERAL ELECTRIC COMPANY'S
    RESPONSE AND REPLY ON  CROSS-MOTIONS
    FOR SUMMARY JUDGMENT

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

Oregon law is not inconsistent. In *Hale v. Fireman's Fund Ins. Co., et al.*, 209 OR. 99, 113, 302 P.2d 1010, an injured plaintiff sued the tortfeasor's insurers for a declaration that the insurers would be responsible for paying any judgment he obtained against the tortfeasor in a separate action. In other words, the facts of the *Hale* case are as if Mr. Belgarde sued Liberty Mutual directly seeking a declaration that in his underlying action against PGE, Liberty Mutual would be responsible for paying any judgment. The court simply found that the fact scenario contained too many contingencies to present a justiciable issue—not the least of which being the relationship between the insurers and a non-party tortfeasor.

*Hale* did not involve, as the present case does, an **insured** (PGE) seeking a declaration that **its insurer** owes it a duty of indemnity in an underlying action. The difference between these scenarios was addressed by the Oregon Supreme Court in *State Farm Fire and Cas. Co. v. Reuter*, 295 Or. 446, 453, 657 P.2d 1231 (1983), where the court found no impediment to declaring the rights and other legal relations between an insured tortfeasor and his insurance company. "[I]n this case declaratory relief is particularly appropriate to determine the liabilities of the insurer." *Reuter*, 295 Or. at 454. *See also North Pac. Ins. Co. v. Forest Industries Ins. Exchange*, 280 Or. 313, 317, 571 P.2d 138 (1977) (declaratory judgment is appropriate method to determine "coverage" under insurance policy).[7]

---

[7] To the extent there is any substantive difference between a declaration regarding PGE's "coverage" under the policy and a declaration regarding PGE's right to "indemnity" under the policy, PGE will accept a declaration that it is entitled to coverage under the policy.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

## CONCLUSION

For all of these reasons, PGE respectfully requests that the Court grant summary judgment in its favor.[8] PGE further requests that the Court:

1.     Declare that Liberty Mutual owes PGE a duty of defense in the underlying action;

2.     Declare that Liberty Mutual owes PGE a duty of indemnity in the underlying action; and

3.     Enter a money judgment in favor of PGE for the costs and expenses it has incurred defending itself in the underlying action, in an amount to be determined.

Dated:  April 17, 2015.

FUCILE & REISING LLP

/s/ Daniel K. Reising_____
Daniel K. Reising, OSB No. 96410
Portland Union Station
800 NW 6th Ave., Ste 211
Portland OR 97209
Tel. 503.224.4894
Fax 503.224.4332

Attorneys for Plaintiff Portland General Electric Company

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 4,943 words.

/s/ Daniel K. Reising_____
Daniel K. Reising, OSB No. 96410

---

[8] PGE reserves the right to petition for an award of its attorney fees incurred in this action.

fucile & reising LLP
800 nw 6th ave, ste 211
portland or 97209
p 503.224.4894
f 503.224.4332

# PGE RESPONSE-REPLY APPENDIX OF EXHIBITS

**Exhibit Number**                         **Description**

Exhibit 13 ………………………………… Excerpt from PGE/NAES Contract

Exhibit 14 ………………………………… Excerpt from Liberty Mutual Policy

# EXHIBIT

# 13

all orders and subcontracts, (iv) protect and maintain the Work, and (v) otherwise mitigate Company' costs and liabilities for those areas of Work suspended.

Nothing in this Contract shall be construed or applied to negate, abridge or reduce Contractor's right to suspend the performance of the Work to the extent authorized by ORS §§ 701.620 to 701.640.

### Article 25. Protection of Work – Preservation of Public/Private Access.

Contractor shall continuously maintain protection of the Work, including materials furnished by Company, from damage. Contractor shall conduct its operations so as not to damage, close or obstruct any highway, road or other public or private easement until permits therefor have been obtained. If such facilities are closed, obstructed, damaged or rendered unsafe by Contractor's operations, Contractor shall, at its sole expense, make such repair in a manner acceptable to Company and shall also provide such temporary guards, lights and other signals as necessary or required for safety or as reasonably requested by Company.

### Article 26. Indemnification.

In addition to any other indemnification stated in this Contract, Contractor shall indemnify, defend and hold harmless Company, its parent and affiliated companies and their directors, officers, employees and agents (hereinafter collectively "Indemnitees") from any and all claims, demands, suits, losses, costs and damages of every kind and description, including attorneys' fees, whether or not the suit is commenced and on trial and appeal, brought or made against or incurred by any of the Indemnitees resulting from, arising out of, or in any way connected with any act, omission, fault or negligence of Contractor, its employees, agents, representatives or subcontractors of any tier, their employees, agents or representatives in the performance or nonperformance of Contractor's obligations under this Contract or in any way related to this Contract. The indemnity obligations under this Article shall include without limitation (i) loss of or damage to any property of Company, Contractor or any third party; (ii) injury, bodily or personal, to or death of any person(s), including without limitation employees of Company, Contractor or Contractor's subcontractors of any tier; and (iii) claims arising out of Workers' Compensation, Unemployment Compensation or similar such laws or obligations applicable to employees of Contractor or its subcontractors of any tier. CONTRACTOR'S INDEMNITY OBLIGATION UNDER THIS ARTICLE SHALL NOT EXTEND TO ANY LIABILITY CAUSED BY THE SOLE NEGLIGENCE OF ANY OF THE INDEMNITEES.

Notwithstanding anything else to the contrary in this Contract, neither party nor any of its shareholders, partners, principals, affiliates, officers, directors, agents, subcontractors, suppliers, or employees shall be liable hereunder for consequential, special or indirect loss or damage to the other party including, but not limited to, loss of revenues, loss of profit and anticipated revenues, cost of capital, loss of goodwill, increased operating costs or any other special, indirect, consequential, or incidental damages.

### Article 27. Protection of Workers.

Prior to commencement of the Work, all of Contractor's workers engaged in the Work shall be protected under applicable Workers' Compensation Acts of the states having jurisdiction

Page 11 – CONSTRUCTION CONTRACT

EXHIBIT 13

# EXHIBIT

# 14



# COMMERCIAL POLICY

TB1-691-544505-011

AEGIS Insurance Services, Inc.
1 Meadowlands Plaza
East Rutherford  NJ  07073

Liberty Mutual is the marketing name for the property and casualty insurance operations of Liberty Mutual Group Inc.  Products may be written in the following stock insurance company subsidiaries of Liberty Mutual Group Inc.:

Liberty Mutual Insurance Company
Liberty Mutual Fire Insurance Company
Liberty Insurance Corporation
LM Insurance Corporation
The First Liberty Insurance Corporation
Liberty Insurance Company of America
Liberty Surplus Insurance Corporation
Liberty County Mutual Insurance Company
Wausau Business Insurance Company
Wausau General Insurance Company
Wausau Underwriters Insurance Company
Employers Insurance Company of Wausau

Not all products and coverages are available in all companies or jurisdictions.

GPO 4613 R1         Copyright 2009 Liberty Mutual Insurance Company.  All rights reserved.

EXHIBIT 14

NAES000001

**Liberty Mutual Insurance Company**

**Liberty Mutual.**
Liberty Mutual Insurance Group/Boston

**COMMERCIAL GENERAL LIABILITY DECLARATIONS**

| ACCOUNT | SUB-ACCT NO. | | | | | | |
|---|---|---|---|---|---|---|---|
| 54 45 05 | S/A | | | | | | |
| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | N/R | 1ST YR |
| TB1-691-544505-011 | 02/7 | | 0300 | KELLEY | 8820 | 2 | 2001 |

**Item 1.** Named Insured     AEGIS Insurance Services, Inc.

         Address             1 Meadowlands Plaza
                              East Rutherford, NJ 07073

         The named insured is:   Corporation

         Business of named insured is: Utility

| **Item 2.** Policy Period | From | Mo. 11 | Day 01 | Year 2011 | to | Mo. 11 | Day 01 | Year 2012 |
|---|---|---|---|---|---|---|---|---|

12:01 A.M., standard time at the address of the named insured as stated herein.

**Item 3.** In return for the payment of the premium, and subject to all of the terms of this policy, we agree with you to provide the insurance as stated in this policy

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| **EACH OCCURRENCE LIMIT** | $ ▮ | |
|     **DAMAGE TO PREMISES RENTED TO YOU LIMIT** | $ ▮ | Any one premises |
|     **MEDICAL EXPENSE LIMIT** | $ ▮ | Any one person |
| **PERSONAL & ADVERTISING INJURY LIMIT** | $ ▮ | Any one person or organization |
| **GENERAL AGGREGATE LIMIT** | $ ▮ | |
| **PRODUCTS / COMPLETED OPERATIONS AGGREGATE LIMIT** | $ ▮ | |

Deductible Endorsement   Yes ☒    No ☐

**THIS POLICY CONTAINS AGGREGATE LIMITS; REFER TO SECTION III - LIMITS OF INSURANCE FOR DETAILS**

| | |
|---|---|
| TERRORISM RISK INSURANCE ACT | $ ▮ |
| TOTAL ADVANCE PREMIUM | $ ▮ |
| NJ Property-Liability Insurance Guaranty Association Surcharge | |

The premium for this policy is payable $        in advance, $        on first anniversary and $        on the second anniversary.

Audit Basis:   0 - Flat Charge

The declarations are completed on the schedules designated Declarations Extension Schedules

These declarations, together with the Common Policy Conditions and Coverage Form(s) and any endorsement(s) complete the above numbered policy.

Forms and endorsements attached to this policy: See attached forms and endorsements schedule

This policy, including all endorsements issued herewith, is hereby countersigned by     *Patricia Fischer*

*N*9L00*                                                    Authorized Representative

| Loc. Code | Typed | Periodic Payment | Rating Basis | Audit Basis | Home State | Pol. H. G. | Renewal of |
|---|---|---|---|---|---|---|---|
| | MJS 11/16/2011 | $ | R | 0 | NJ | S- ☐ | TB1-691-544505-010 |

GPO 4051 R3

**EXHIBIT 14**

NAES000002

INVENTORY COVERAGE FORMS / PARTS, ENDORSEMENTS, ENCLOSURES

**POLICY NUMBER:**   TB1-691-544505-011

**COMMON POLICY CONDITIONS**

| | |
|---|---|
| GPO 4613 | All Lines Policy Cover |
| GPO 4051 R3 02 99 | Commercial General Liability Declaration |
| | Inventory Coverage Forms / Parts, Endorsements, Enclosures |
| GPO 4977 02 09 | Producer Name and Mail Address Schedule |
| GPO 4078 R2 11 01 | Mutual Conditions |
| LD 25 31 11 11 | AEGIS Additional Named Insured and Reimbursement Endorsement |
| IL 00 17 11 98 | Common Policy Conditions |
| IL 01 46 08 10 | Common Policy Conditions |
| IL 00 21 05 02 | Nuclear Energy Liability Exclusion Endorsement |
| IL 00 21 09 08 | Nuclear Energy Liability Exclusion |
| IL 01 98 09 08 | Nuclear Energy Liability Exclusion Endorsement |
| IL 01 41 09 08 | New Jersey Changes - Civil Union |
| IL 01 42 09 08 | Oregon Changes - Domestic Partnership |
| IL 01 68 09 08 | Texas Changes - Duties |
| IL 02 08 09 07 | New Jersey Changes - Cancellation and Nonrenewal |

**GENERAL LIABILITY COVERAGE PART FORMS**

**COVERAGES**

| | |
|---|---|
| GPO 4053 | Declarations Extension Schedule |
| CG 00 01 12 07 | Commercial General Liability Coverage Form (Occurrence Version) |
| CG 00 68 05 09 | Recording and Distribution of Material or Information in Violation of Law Exclusion |

**STATE FORMS**

| | |
|---|---|
| CG 01 03 06 06 | Texas Changes |
| CG 01 22 12 07 | Minnesota Changes - Contractual Liability Exclusion and Supplementary Payments |
| CG 01 81 05 08 | Washington Changes |
| CG 01 86 12 04 | Utah Changes |
| CG 01 97 12 07 | Washington Changes - Employment-Related Practices Exclusion |
| CG 26 05 02 07 | Minnesota Changes |
| CG 26 20 10 93 | New Jersey Changes - Loss Information Endorsement |
| CG 26 39 12 07 | Texas Changes - Employment Related Practices Exclusion |
| CG 26 81 12 04 | Minnesota Changes - Duties Condition |

**ADDITIONAL COVERAGES**

| | |
|---|---|
| LN 20 01 06 05 | Blanket Additional Insured |

**EXCLUSIONS**

| | |
|---|---|
| CG 21 16 07 98 | Exclusion - Designated Professional Services |
| CG 21 42 12 04 | Exclusion - Explosion, Collapse and Underground Property Damage Hazard (Specified Operations) |
| CG 21 47 12 07 | Employment - Related Practices Exclusion |
| CG 21 49 09 99 | Total Pollution Exclusion |
| CG 21 51 09 89 | Amendment of Liquor Liability |
| CG 21 67 12 04 | Fungi or Bacteria Exclusion |
| CG 21 73 01 08 | Exclusion of Certified Acts of Terrorism |
| CG 22 33 07 98 | Exclusion - Testing or Consulting Errors and Omissions |
| CG 22 43 07 98 | Exclusion - Engineers, Architects or Surveyors Professional Liability |
| CG 22 50 11 88 | Exclusion Endorsement - Failure to Supply |
| CG 26 88 01 08 | Exclusion of Certified Acts of Terrorism |
| LC 21 01 06 05 | Asbestos Exclusion |

EXHIBIT 14

NAES000003

## INVENTORY COVERAGE FORMS / PARTS, ENDORSEMENTS, ENCLOSURES

| | |
|---|---|
| LC 21 02 06 05 | Silica Exclusion Endorsement |
| LC 21 04 06 05 | Discrimination Exclusion |
| LC 21 06 06 07 | Lead Exclusion |
| LC 21 38 06 07 | Polychlorinated Biphenyls (PCB's) Exclusion |
| LC 21 39 06 07 | Radioactive Matter Exclusion |
| LC 21 42 06 07 | Electromagnetic Fields and Electromagnetic Radiation Exclusion |
| LC 21 65 08 07 | MTBE Exclusion |
| LC 32 38 06 05 | New Jersey Lead Exclusion |
| LC 32 74 06 05 | Asbestos Exclusion Endorsement |
| LC 99 02 06 07 | Knowledge of Occurrence |

**OTHER**

| | |
|---|---|
| CG 24 04 05 09 | Waiver of Transfer Rights of Recovery Against Others to Us |
| CG 24 17 10 01 | Contractual Liability - Railroads |
| LC 03 07 06 05 | Deductible - Damage and Supplementary Payments |
| LC 25 13 08 08 | Non-Cumulation of Liability (Same Occurrence) |
| LC 29 06 08 08 | Personal and Advertising Injury - Occurrence Redefined |
| LC 99 01 06 05 | Notice of Occurrence |
| LC 99 03 06 07 | Unintentional Failure to Disclose |
| LC 99 13 03 11 | Texas Disclosure Form |
| LN 24 01 06 05 | Contractual Liability Exclusion Amended |
| LN 29 04 06 05 | Personal and Advertising Injury Redefined |
| LN 29 06 06 05 | Advertisement Redefined |
| LN 99 04 06 05 | Premium Responsibility Endorsement |

**NOTICE TO POLICYHOLDER**

| | |
|---|---|
| GPO 4839 02 04 | Notice of the Availability of Loss Control Information |
| GPO 4887 12 07 | Policyholder Disclosure Terrorism Risk Insurance Act |

# EXHIBIT 14

NAES000004

(

## PRODUCER NAME AND MAIL ADDRESS SCHEDULE

The Schedule Page includes the following Producer Name and Mail Address:

Name:     MARSH USA INC
Mail       111 SW COLUMBIA ST #500
Address:   PORTLAND OR 97201

**Policy Number: TB1-691-544505-011**

GPO 4977 02 09

**EXHIBIT 14**

NAES000005