IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND GENERAL ELECTRIC
COMPANY, an Oregon corporation,                    No. 03:15-cv-00217-HZ

        Plaintiff,

      v.                                                                 OPINION & ORDER

LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,

        Defendant.

Daniel K. Reising
FUCILE & REISING LLP
800 NW 6th Ave., Ste 211
Portland, Oregon 97209

    Attorney for Plaintiff

Thomas M. Christ
Paul A.C. Berg
COSGRAVE VERGEER KESTER LLP
888 S.W. 5th Ave., Ste 500
Portland, Oregon 97204

    Attorneys for Defendant

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Portland General Electric Company (Plaintiff or PGE) brings this action against Defendant Liberty Mutual Insurance Company seeking a declaration that Defendant has a duty to defend Plaintiff in an underlying personal injury lawsuit and has a duty to indemnify Plaintiff in connection with that underlying action. Plaintiff also brings a second claim for damages suffered as a result of Defendant's failure to defend and indemnify.

Both parties move for summary judgment. I grant Plaintiff's motion in part and deny Defendant's motion.

## BACKGROUND

In April 2014, Joel Belgarde brought an action against PGE in Multnomah County Circuit Court alleging that he was injured at PGE's Boardman coal plant in May 2012. Ex. 6 to Pl.'s SJ Mem. In the underlying Complaint, Belgarde alleges that he is a boilermaker and that he was employed by NAES Corporation to perform work at PGE's Boardman plant. Ex. 6 to Pl.'s SJ Mem. at ¶ 1. He alleges that at all times during his work at the plant, PGE controlled, directed, and monitored his work. Id. at ¶ 3. He contends that he was injured in an accident at the Boardman plant on May 2, 2012. Id. at ¶¶ 4-9. He brings a claim of negligence, contending that PGE was negligent in five specified ways. Id. at ¶¶ 10, 12-15. He also brings a claim under the Employer Liability Law (ELL), contending that PGE violated its duties under the law in those same five specified ways. Id. at ¶¶ 10, 16-21.

Several years before this incident occurred, Plaintiff and NAES entered into a written contract under which NAES performed maintenance at the Boardman Plant. Ex. 1 to Pl.'s SJ Mem. The contract required NAES to procure commercial general liability insurance covering

2 - OPINION & ORDER

all of its operations and insuring against bodily injury and property damage. Id. at 3 (page 12 of contract; Art. 28). The contract also required NAES to "name PGE, its directors, officers and employees as Additional Insureds by endorsement or otherwise[.]" Id. at 4 (page 13 of contract; Art. 28). A Certificate of Insurance dated May 16, 2012 lists the insured as NAES under a commercial general liability occurrence policy effective November 1, 2011 to November 1, 2012. Ex. 2 to Pl.'s SJ Mem. The insurer is listed as Liberty Mutual Insurance Company. Id.

The insurance policy obligates the insurer to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "to defend the insured against 'suit' seeking those damages." Ex. 5 to Pl.'s SJ Mem. There is no dispute that Belgarde suffered a bodily injury and that the underlying action against PGE qualifies as a "suit" under the policy. Def.'s Cross-Mtn at 3. The issue in this case is whether PGE is an "insured."

The insurance policy states that the "word 'insured' means any person or organization qualifying as such under Section II - Who Is An Insured." Ex. 5 to Pl.'s SJ Mem. Although the "Who Is An Insured" section of the policy is not in the summary judgment record, Defendant represents, and Plaintiff does not contest, that Plaintiff is not an insured under that section of the policy.

The "Blanket Additional Insured" endorsement amends the "Who Is An Insured" portion of the insurance policy "to include as an insured any person or organization for whom you have agreed in writing to provide liability insurance." Ex. 3 to Pl.'s SJ Mem. Defendant represents that the "named insured" in this policy is actually AEGIS Insurance Services, but Defendant concedes that based on policy-related documents that Plaintiff failed to submit, NAES qualifies

3 - OPINION & ORDER

as a named insured as well. Def.'s Cross-Mtn at 5; see also Ex. A to Def.'s Cross-Mtn (Declarations showing Named Insured as AEGIS). Under the Blanket Additional Insured endorsement, the term "insured" includes anyone that either AEGIS or NAES agreed in writing to insure. Given the contract between Plaintiff and NAES noted above, Plaintiff appears to be an insured under the policy. However, its status as an insured depends on the interpretation of the insurance policy in light of Oregon Revised Statute § (O.R.S.) 30.140 as discussed below.

STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the

light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

I.  O.R.S. 30.140

In its Cross-Motion for Summary Judgment, Defendant argued that O.R.S. 30.140 voids the agreement by NAES to insure Plaintiff against liability for any injury or property damage arising out of NAES's work for Plaintiff. In relevant part, the statute provides:

> (1) Except to the extent provided under subsection (2) of this section, any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property caused in whole or in part by the negligence of the indemnitee is void.
>
> (2) This section does not affect any provision in a construction agreement that requires a person or that person's surety or insurer to indemnify another against liability for damage arising out of death or bodily injury to persons or damage to property to the extent that the death or bodily injury to persons or damage to property arises out of the fault of the indemnitor, or the fault of the indemnitor's agents, representatives or subcontractors.

O.R.S. 30.140.

O.R.S. 30.140 was enacted to prevent "parties with greater leverage in construction agreements (generally owners and contractors) from shifting exposure for their own negligence- or the costs of insuring against that exposure-to other parties (generally subcontractors) on a

5 - OPINION & ORDER

'take-it-or-leave-it' basis." Walsh Constr. Co. v. Mut. of Enumclaw, 189 Or. App. 400, 410, 76 P.3d 164, 169 (2003), aff'd, 338 Or. 1, 104 P.3d 1146 (2005).

The statute prohibits "agreements by which a party's insurer would be required to indemnify another party for damages arising from the latter party's negligence." Walsh Constr. Co. v. Mut. of Enumclaw, 338 Or. 1, 9, 104 P.3d 1146, 1150 (2005). Additionally, as made clear in Walsh, "the statute prohibits not only 'direct' indemnity arrangements between parties to construction agreements but also 'additional insured' arrangements by which one party is obligated to procure insurance for losses arising in whole or in part from the other's fault." Id. Given the purpose of the statute, it does not matter that the "shifting allocation of risk is accomplished directly, *e.g.* by requiring the subcontractor itself to indemnify the contractor for damages caused by the contractor's own negligence, or indirectly, *e.g.*, by requiring the subcontractor to purchase additional insurance covering the contractor for the contractor's own negligence[.]" Walsh, 189 Or. App. at 410, 76 P.3d at 169. "[T]he ultimate-and statutorily forbidden-end is the same." Id.

In the summary judgment motions and at oral argument before this Court, Defendant argued that O.R.S. 30.140(1) voided the contractual additional insured provision in the PGE/NAES contract because the provision requires NAES to procure insurance for Plaintiff's own negligence. Defendant acknowledged that the provision encompasses the fault of NAES in addition to any fault of Plaintiff. Defendant nonetheless argued that because the contractual provision is not limited to damages caused by NAES's own negligence, the provision requires NAES to procure liability insurance for damages "caused in whole or in part" by the negligence of Plaintiff. Defendant contended that under O.R.S. 30.140(1), such a contractual provision is

6 - OPINION & ORDER

void.

This issue was raised by *amici curiae* in Walsh, but that court declined to reach it. 338 Or. at 11, 104 P.3d at 1151. However, in a 2013 decision, the Oregon Court of Appeals rejected Defendant's argument. Montara Owners Ass'n v. La Noue Dev., LLC, 259 Or. App. 657, 317 P.3d 257 (2013). The parties' summary judgment briefing indicated that the Oregon Supreme Court had heard oral argument in the case several months ago and had taken the matter under advisement. After the June 1, 2015 oral argument in this case, and while the summary judgment motions were under advisement, the Oregon Supreme Court affirmed the Oregon Court of Appeals on this issue. Montara Owners Ass'n v. La Noue Dev., LLC, No. SC S062120, 2015 WL 3791636 (Or. June 18, 2015). The parties have each submitted briefing on the impact of the Oregon Supreme Court's decision.

In Montara Owners Ass'n, the Oregon Supreme Court held, as argued by Plaintiff here, that an indemnification provision subject to O.R.S. 30.140 is not completely void when it requires the indemnitor (usually a subcontractor) to indemnify another (the indemnitee, usually a general contractor) for damages that arise in whole or in part by the negligence of the indemnitee if the provision also allows indemnification for damages that arise in whole or in part out of the negligence of the indemnitor. 2015 WL 3791636, at **3-6. To the extent the provision requires indemnification for the negligence of the indemnitee, it is void under O.R.S. 30.140(1). Id. at *3. But, because the court read subsection (2) as an exception to subsection (1), it held that the indemnity provision remained enforceable to the extent allowed by subsection (2), meaning to the extent it required indemnification for the negligence of the indemnitor. Id. at **4-6. Such provisions are "partially enforceable." Id. at *3. Thus, the Oregon Supreme Court agreed with

7 - OPINION & ORDER

the Oregon Court of Appeals that the portion of the indemnity provision at issue in <u>Montara Owners Ass'n</u> and which violated O.R.S. 30.140(1) was void, but the portion of the indemnity provision that allowed indemnification for the fault of the subcontractor under O.R.S. 30.140(2), was valid. <u>Id.</u> at \*\*3-6; <u>see also id.</u> at \*17 ("we hold that ORS 30.140 allows for partial invalidation of overbroad indemnity clauses in construction contracts").

The result of the Oregon Supreme Court's decision in the instant case means that the additional insured provision in the contract between Plaintiff and NAES is partially enforceable. The Oregon Supreme Court's <u>Montara Owners Ass'n</u> decision forecloses Defendant's argument that O.R.S. 30.140(1) completely invalidates the provision. Under <u>Montara Owners Ass'n</u>, Plaintiff's contract with NAES is void to the extent it requires NAES to make Plaintiff an additional insured for damages caused by Plaintiff's own negligence, but the contract remains enforceable to the extent that it requires NAES to make Plaintiff an additional insured for damages caused by NAES's negligence.

II. Duty to Defend

Defendant argues that even under <u>Montara Owners Ass'n</u>, it owes Plaintiff no duty to defend Plaintiff in the underlying action. As characterized by Defendant, Belgarde's Complaint in the underlying action does not allege that NAES caused his injuries. It alleges that Plaintiff and only Plaintiff caused his injuries. According to Defendant, there is a complete absence of any allegation of fault by NAES. Defendant argues that because NAES's contractual promise to insure Plaintiff is, under <u>Montara Owners Ass'n</u>, enforceable only to the extent it covers liability for injuries caused by NAES, Plaintiff is insured only to the same extent as NAES under the endorsement to the insurance policy. Because, Defendant continues, the underlying Complaint

makes no allegations of fault by NAES but only as to Plaintiff, Defendant has no duty to defend the claims in that underlying Complaint and thus, summary judgment must be granted to Defendant on the duty to defend claim.  Plaintiff argues that the underlying Complaint is ambiguous and implies negligence by NAES which triggers the duty to defend.  I agree with Plaintiff.

> Whether an insurer has a duty to defend an action against its insured depends on two documents:  the complaint and the insurance policy.  An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy.

Ledford v. Gutoski, 319 Or. 397, 399-400, 877 P.2d 80, 82 (1994) (citation omitted).  "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage."  Id. at 400, 877 P.2d at 83.  Any ambiguity in the complaint with respect to whether the allegations could be covered by the policy must be resolved in favor of the insured.  Id.  In the absence of express allegations of negligence, the inquiry focuses on whether fault is implied.  Arch Ins. Group, Inc. v. Travelers Prop. Cas. Co., No. 03:10-cv-00801-HZ, 2011 WL 6778757, at *3 (D. Or. Dec. 23, 2011).

Similar to the underlying complaint in Arch, the allegations in Belgarde's underlying Complaint make no express mention of NAES, his employer.  Id. at *2; see also Clarendon Nat'l Ins. Co. v. Am. States Ins. Co., 688 F. Supp. 2d 1186, 1192 (D. Or. 2011) (underlying complaint contained no express allegation against employer); Richardson v. Howard S. Wright Constr. Co., No. CV-05-1419-ST, 2007 WL 1467411, at *6-7 (D. Or. May 18, 2007) (same).  But, as expressly noted by Judge Stewart in Richardson and Judge Jones in Clarendon, Belgarde's failure

9 - OPINION & ORDER

to mention his employer, combined with his affirmative allegations that PGE controlled, directed, and monitored his work at the Boardman plant, is likely attributable to the exclusivity of Oregon's worker's compensation law which prohibits Belgarde from bringing an action for negligence against his employer for his workplace injury.

In addition to the allegations in Belgarde's underlying Complaint regarding PGE's fault, Ex. 6 to Pl.'s SJ Mem. at ¶¶ 5, 7, 10, there is also an allegation that Belgarde "was instructed to move the air cannon from station to station to propel heating elements in to place." Id. at ¶ 7. No entity or person is identified revealing who gave Belgarde this instruction. Id. Belgarde further alleges that while he was moving the air cannon, the air cannon's main valve lever caught in a loop in his overalls, activating the air supply to the air cannon. Id. at ¶ 9. At that point, Belgarde alleges, his co-worker instinctively closed the safety valve which caused the air cannon to shoot backwards with great force, causing severe injury to Belgarde. Id. He also alleges that the safety catch on the main valve, "which would have prevented the activation of the air cannon supply," had not been properly installed, disabling the function of the safety catch. Id.

These assertions in Paragraph 9 of the underlying Complaint implicate NAES's negligence by alleging that the main valve lever got caught in Belgarde's loop on his overalls and that his co-worker closed the safety valve. Although Belgarde's additional allegations regarding the improperly installed safety catch focus on Plaintiff's liability, all of the allegations in Paragraph 9 of the underlying Complaint when read together indicate that some combination of the belt loop snag, the co-worker's closing the safety valve, and the improperly installed and positioned safety catch, led to his injury. Because NAES as the employer has agency responsibility and thus, liability, for any negligence of Belgarde (in regard to the loop on the

10 - OPINION & ORDER

overalls) and Belgarde's co-worker (in regard to closing the safety valve), the underlying Complaint, when read broadly and when construing ambiguities in Plaintiff's favor, implicitly alleges that NAES may bear some fault for Belgarde's injuries.

Additionally, the allegation in Paragraph 7 of the underlying Complaint that Belgarde "was instructed to move the air cannon," combined with the allegation in Paragraph 9 that the injury occurred while the air cannon was being moved, leaves open the possibility that someone at NAES instructed Belgarde to move the air cannon, further implicating NAES in causing the injury. Because NAES had a contract to perform maintenance at the Boardman plant and Belgarde was employed by NAES, it is reasonable to infer that someone at NAES provided the instruction to move the air cannon, even though Belgarde alleges that Plaintiff controlled and directed his work. In a similar case, Judge Aiken concluded the underlying complaint was ambiguous and there was a duty to defend because there were no express allegations as to who had been responsible for a flight of temporary steps on which the plaintiff had been injured, and as a result, the allegations implicated nonparties, including the insured. Hoffman Constr. Co. of Or. v. Travelers Indem. Ins. Co., No. 05-456-AA, 2005 WL 3689487, at *4 (D. Or. Nov. 28, 2005).

Given my interpretation of the allegations in the underlying Complaint, I agree with Plaintiff that Defendant owes Plaintiff a duty to defend Plaintiff in the underlying action brought against Plaintiff by Belgarde. Thus, summary judgment is granted to Plaintiff and denied to Defendant on the duty to defend claim.[1]

---

[1] As noted above, Plaintiff brings two claims for relief: (1) a claim for declaratory relief seeking a judicial determination that Defendant is obligated to defend and indemnify Plaintiff in connection with the underlying action; and (2) a claim for damages as a result of Defendant's

11 - OPINION & ORDER

III. Duty to Indemnify

The duty to indemnify is separate from the duty to defend. Whether or not an insurer has a duty to defend based on the allegations in the initial complaint, "the facts proved at trial on which liability is established may give rise to a duty to indemnify if the insured's conduct is covered." Ledford, 319 Or. at 403; 877 P.2d at 84. "[T]he duty to indemnify is established by proof of actual facts demonstrating a right to coverage." Nw. Pump & Equip. Co. v. Am. States Ins. Co., 144 Or. App. 222, 227, 925 P.2d 1241, 1243 (1996). The analysis for the duty to indemnify is not limited to the complaint and the policy. See Ledford, 319 Or. at 403-04, 877 P.2d at 84 (at summary judgment, evidence presented included the complaint, existence of settlement, and an affidavit from the defendant's attorney).

Plaintiff initially argues that it is entitled to summary judgment on the duty to indemnify based on the independent indemnity agreement in its contract with NAES. Plaintiff contends that the provision is entirely valid under O.R.S. 30.140 and presents no limitations on its right to indemnity. But, as Defendant notes, the indemnity provision in that contract is not relevant. In this action, Plaintiff does not bring a common law indemnity claim against NAES but brings an insurance coverage claim against Defendant. As a result, Plaintiff must be an insured under the insurance policy. As Defendant states, "[w]hether PGE is an insured under the endorsement to Liberty Mutual's policy depends on whether NAES has lawfully agreed to *insure* PGE, not

---

failure to indemnify it in an amount to be proven at trial. In granting Plaintiff's motion, I grant the motion as to the portion of the declaratory relief claim addressed to the duty to defend and I grant the motion as to the portion of the damages claim to the extent that Plaintiff is owed damages as a result of Defendant's duty to defend. Because the summary judgment record contains no evidence of what those damages are, I make no determination at this point of an amount of such damages.

12 - OPINION & ORDER

whether NAES has lawfully agreed to *indemnify* it." Def.'s Reply Mem. at 3.

Plaintiff is an insured only under the endorsement which amends the "Who Is An Insured" section of the insurance policy "to include as an insured any person or organization for whom you [meaning NAES] have agreed in writing to provide liability insurance." Ex. 3 to Pl.'s SJ Mem. Thus, in this action against Defendant seeking insurance coverage of a defense and indemnity, Plaintiff must establish at the outset that it is an insured. Plaintiff can do this only via the PGE/NAES agreement in which NAES agreed to provide insurance. Because that agreement is in fact subject to the application of O.R.S. 30.140, both the duty to defend and the duty to indemnify are subject to that statute. I reject Plaintiff's argument that the separate contractual indemnification provision stands on its own without regard to O.R.S. 30.140.

Next, Plaintiff argues that the facts in the record demonstrate that the accident to Belgarde occurred not only because Belgarde accidently opened the main valve of the air cannon and his co-worker closed the safety valve, but also because a NAES foreman told Belgarde and the co-worker to use the air cannon without training either of them in its safe use. Plaintiff contends that there is no issue of fact for trial that NAES bears responsibility for the accident. Because, Plaintiff argues, the facts establish NAES's liability for conduct covered by the policy, Plaintiff is entitled to indemnification for any damages incurred in connection with the accident. Thus, it argues, Defendant owes it such indemnification.

I disagree. Even if the evidence Plaintiff relies on indicates that NAES is at fault for Belgarde's injury, it is premature at this summary judgment stage to make the final determination on indemnity. See Clarendon, 688 F. Supp. 2d at 1193 (although witness statements summarized in claims report established that the underlying plaintiff was under the subcontractor's

13 - OPINION & ORDER

supervision at the time of the accident, the evidence was nonetheless insufficient "as a matter of law" to permit a ruling as to the subcontractor's liability in the underlying action); Richardson, 2008 WL 146741, at *9 (premature at summary judgment to determine whether the general contractor would be able to prove in the underlying action that the subcontractor was liable in whole or in part for causing the injuries). Here, assuming for the purposes of this Opinion that the evidence establishes some fault by NAES, it remains uncertain whether Plaintiff may also bear some fault. Accordingly, at this point, I deny the motion on the indemnity issue as premature.

CONCLUSION

Plaintiff's motion for summary judgment [8] is granted in part and denied in part. Defendant's cross-motion for summary judgment [11] is denied.

IT IS SO ORDERED.

Dated this 24 day of June, 2015

/s/ Marco Hernandez
Marco A. Hernandez
United States District Judge

14 - OPINION & ORDER